To the fourth case, Boucher v. Financial System of Green Bay, Finance System of Green Bay, Mr. Stern. May it please the Court, I am Philip Stern and I'm here on behalf of the We've brought this action with regard to defendant's letters sent in connection with collecting a debt. Those letters misrepresented the future accrual of late fees and other charges. The letters materially affect an unsophisticated consumer's decision to pay debts. Defendant collects, excuse me, to pay debts. Defendant collects those debts by including an indication that there will be late charges and other charges when in fact they never can apply. And it gives them an advantage with respect to a consumer's decision to pay another debt that another collector who honestly reveals that there's only interest accruing on it. And there are no late charges or other charges. By virtue of this court's accuracy proviso in the Miller decision, the defendant does not navigate into the safe harbor because its letters inaccurately and misleadingly mischaracterize these debts. The purpose of the safe harbor language is to alert the consumer that the amount of the debt may change with the passage of time. The language here does that. And so long as the amount of the debt will in fact vary due to one or more time-sensitive charges, why does it matter whether or not all of the listed charges will actually be imposed? It really compares the situation of this letter that the defendant sent and another letter where the defendant, like the debt collector did in Williams v. OSI, where they just said is interest accrues. Here, the debt collector said interest accrues and they cite to the Wisconsin statute. Well, they don't cite to the Wisconsin statute, but it's the Wisconsin statute that allows 5% simple interest to accrue. And if you look at the letters, based upon the amount of interest they've already accrued, one of the letters it was nine cents, the other ones it was zero. Presumably interest had not started to accrue. So the consumer gets that letter and then says, oh, okay, there's interest accruing, but now I'm going to pay, if I don't pay this real soon, I'm going to have late charges. Consumers, the public generally understands late charges to be rather significant. Here we're talking about pennies, a few dollars a year on these debts that accrue by the interest. But when you start adding late fees, 10, 20, 30, $40 a month, it dwarfs any kind of interest. And so that a consumer deciding what debts to pay will pay the debt first to avoid a late charge rather than knowing, well, maybe I can, if I need to decide which debts to pay, I can wait on this one because it's only accruing 5% interest. I know that that's going to happen, but I don't know what late charge is going to happen. And that's just simply, it's just simply false that there is any late charges that could ever apply or other charges that could ever apply. And this is the- There's nothing false about the letter. You may want more in it, but the purpose of the Miller Safe Harbor, that language is simply to alert the consumer that the debt amount may change over time. So in that generalized context, they could be listing the types of charges that might change the amount of debt. But do they have to? That, I believe Judge Griesback was correct about. Well, obviously we disagree, Your Honor, with respect to that interpretation. Miller clearly says that you can use this language when it's accurate. And the cases since Miller have uniformly said whether or not you use the safe harbor language, what you say about the amount of the debt has to be accurate. And so the court has allowed debt collectors to not use the safe harbor language, but when they were accurately describing what would happen to the debt after going forward in the future. And they've also rejected letters that have made any changes, and our position is that when a consumer gets this letter and it says, your creditor has authorized us to add 5% interest per year on the above account. And with one of those letters, it amounts to, I've done the math, three days of interest, and the other one, there's zero interest. But then it says, because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. And that simply is not true. And Miller was very clear about using the safe harbor when it was, or not using the safe harbor when it was inaccurate. There was a proviso in terms of the use of the safe harbor. And certainly, this defendant knew how to change that language when it wanted to, because it left out a whole clause dealing with the payment of it by check. So it certainly knew that if it wanted to change the language, it could change the language. It didn't have to slavishly copy the safe harbor verbatim. In fact, it didn't do that. It didn't do it verbatim. And when it was amending that language, it certainly could have amended it to exclude references to late charges and other charges, because that could never happen. It was an impossibility. And therefore, using Miller's language was inaccurate and misleading to an unsophisticated consumer. Again, with respect to the materiality aspect, it's our view that really, that's really what this case boils down to is maybe a discussion about materiality. There's no question from our position that the statement that these debts could increase due to late charges or other charges is absolutely false. It just, it can't happen. And so therefore, the issue is as to materiality, and I've articulated with respect to materiality, how we think it affects the consumer's decision. The, you know, just simply comparing it to another letter. If you know that you can pay your bill and you can't, and you've got two bills to pay, and you've got to choose, the one that's going to incur late charges is the one you're going to pay first to avoid the incurring of late charges. When in fact, there were no late charges ever accruing. You want to reserve some time, Mr. Stern? Yes, I do. All right. Thank you, Your Honor. Okay. Ms. Janssen? Good morning. May it please the court, counsel, Kim Janssen on behalf of Finance System of Green Bay. So there are a couple points that are not at all in dispute in this case. And the first and most critical, of course, is that the numbers in each of those debt collection letters are accurate. There's no question that the total amount due, including accrued interest, was correct. Well, I don't think there's a controversy over that, is there? Well, there's not as far as the numbers. They do not dispute that the principal balance stated or the- Let's talk about the language. That's where the dispute comes. So the question becomes, is it appropriate to use the Miller Safe Harbor language verbatim when only one of the three reasons that a debt might increase actually applies? This court did suggest that it is appropriate in Chiu Way. And admittedly, that is dicta in Chiu Way. But in Chiu Way, this court said that if the amount of the debt is going to increase because of interest or other charges, the debt collector should use the Miller language. And then this court proceeded to quote that language verbatim. There's no circuit authority whatsoever addressing this particular issue. And in fact, the parties have only located two district court cases that get to this particular point. The case upon which the plaintiffs rely, Hover Mail, is out of New Jersey. There are two problems with relying on Hover Mail. First, in that case, the district court in New Jersey incorrectly stated this court's holding in Taylor, suggesting that Taylor was inapplicable because that case only applied to 1692G amount of debt claims and not to 1692E false or misleading statement claims. But on a more fundamental level, that is also a case decided in that circuit under the least sophisticated consumer standard, which this court has stated time and again. Discussing these district court cases, wouldn't it be the better practice for a debt collector to confine the Miller language to charges that may actually be imposed against this consumer? Wouldn't that be the better practice? Your Honor, I can certainly see that that would be more precise, more accurate, perhaps more helpful to the debtor. But, you know, as another district court case suggested, it would be unusual for this court to have suggested the language in Miller if using that language was going to be potentially misleading or deceptive for a consumer. And I think as was touched on in the plaintiff's opening argument, I think this really does kind of boil down to even accepting that including all three is perhaps false in a technical sense. Is that inaccuracy material? And under this court's precedence, under this court's standards, it's only material if the average unsophisticated consumer would be influenced by that deviance in making the decision to pay. And I think as Judge Rovner astutely pointed out, you know, the purpose of the Miller language is simply to let the debtor know, the consumer know that, you know, here's the amount of your debt today, but we want to make sure you know it's going to increase over time, and here are a couple of possible reasons why it would increase. Whether the debt is increasing because of interest or because of other charges. Miller does not give license, in my view, to include language which is clearly misleading. The late charge language can be sophisticated or unsophisticated. The consumer leaves you to wonder what is a late charge. So I'm a little, the reliance on Miller as some sort of life raft that gives you, like in this case, the opportunity to add language, which is I find a little chilling, don't you? I mean, late charges. In other charges? I mean, what are the other charges? I mean, if I receive the letter, what should a sophisticated, let's call it, consumer think about that, Ms. Jansen, when you receive the language that we have here? And I appreciate the compliment that you would see me as a sophisticated consumer. I, you know, I think when you look at it. You're an able counsel, so I assume you're a sophisticated consumer. Thank you, Your Honor. You know, I think when you see that language, you see precisely what the Miller court intended by suggesting it. That, okay, the amount of debt stated on this letter is not static. It is going to change over time. It is going to increase over time. The letters do specify that the precise amount is going to change over time with interest. You know, I might look back to the particular agreement to see if there were late charges, but there's no indication on here that late charges were being imposed. And to sort of mirror some of this court's language in Taylor, there was no statement that they were going to impose late charges, only that they might. These are three reasons that the amount might increase. But the letter doesn't say we are authorized, as it does for insurance, interest, excuse me. The letter specifically says we are authorized to impose interest. The letter doesn't purport to tell plaintiffs, you know, we've received authorization to impose any additional charges beyond that. Okay. If this court has no further questions, I do believe this does really boil down to whether, you know, the deviance between the Miller prescribed language and the specific facts. Miller is 17 years old, and we've been evolving these cases, you know, for some time. I'm much older than that. But I just wonder when we can get to a point where in this area we can be specific as to what is to be charged and not add language, which arguably might be misleading. But I appreciate your position. Certainly, and I would just highlight that we did not add any language to the Miller. No, no, I understand. I just wanted to make sure that was clear.  I mean, the letter here, which talks about the... May have been more than was... Relay charges and other charges. Understood. Unless this court has further questions, I would simply ask that you refer. Thank you. Thank you, Ms. Wilson. Mr. Stern. Thank you, Your Honor. A couple of points. Hopefully I can get them out very briefly. With respect to the comment about Chuey, at the end of Chuey, where there's some reference and they used the or, and there was some emphasis on that. While, and I appreciate that the defendant acknowledges that that was really, that's dicta. It's not holding in the case early in the opinion. It said that it was, that Miller was not on point. But the clear aspect of it is the reference to Miller at the end of Chuey. They didn't abrogate Miller's proviso that you have to still be accurate. So to say that Chuey authorized just verbatim copying it, it just doesn't hold up. And the other side to it is they didn't do it verbatim. They did modify it. The second thing is Miller mentioned those items because those were applied in Miller. Miller was dealing with a lawyer's letter dealing with a defaulted mortgage. Where you had all sorts of things that could accrue. Not just late charges and interest, but also things like escrow advances. So that there were things that were unknown. But more importantly is, if Miller only stands for the proposition that you use this language. When for any reason at all, the debt's going to change over time, then why didn't Miller just say that? They didn't have to mention anything about interest or late charges or other charges or anything else. They could have just said is, just tell the consumer, the amount's going to change over time. Don't have to explain it. But they did explain it, and they did provide reasons for the same reason that the court in, I'll probably get it right, I think it's Veatch, is the case where they added the attorney's fees. And court said is, you gotta break it down. I think it was with the vet bill. It was a vet bill for $122, and eight months later now they get a bill saying, a collection letter that says you owe more than three times that. The point again is that if you're going to specify it, you have to be accurate in terms of specifying it. All right, thank you. And the only last thing I want to add is, one of the important policies behind the FDCPA is also competitive advantage between debt collectors. A debt collector like OSI that honestly just said is, there's only interest accruing. And defendant, is the defendant gets the advantage of getting the debt collector, the consumer to pay first. And they get an advantage then by- And you ran out of time. Okay. All right, thank you. That's your turn. Thank you for the court's consideration. Thanks to all counsel. Case is taken under advisement.